# Lightman Brothers & Goldstein v. Epstein.

### *Trial of Right of Property.*

(Decided Dec. 16, 1909.  51 South. 164.)

1. *Appeal and Error; Review; Sustaining Objections to Evi-dence.*—An objection to evidence, if properly sustained on any ground, will not work a reversal although sustained on an improper ground.

2. *Trial of Right of Property; Title to Sustain; Title in Third person.*—In a trial of right of property which has been levied on under execution, the claimant must stand on his own title, and cannot set up an outstanding title in a third person with which he does not connect himself, and hence, a deed of assignment of the property to a stranger, offered in evidence by the defendant, before evidence was introduced to connect claimant with the title, was properly excluded.

[Lightman Brothers & Goldstein v. Epstein.]

3. *Same; Judgment.*—On the trial of right of property, the judgment, if adverse to the claimant, should condemn the property. levied on under the execution and claimed by the claimant, to the satisfaction of plaintiff's demand, since the claimant has the right to deliver the property to the officer making the levy, and pay the costs within thirty days, and so acquit themselves and their bonds· men of future liability under the claim bond, (Section 6042, Code 1907.) and hence a judgment for the value of the goods levied on is not proper.

4. *Fraudulent Conveyances; Preferences; Knowledge of Grantee.* An insolvent person may select and pay such of his creditors as he wishes, thus disabling himself from paying the others, although the preferred creditors know that the transaction will deprive the debtor of means to satisfy his other debts; the debtor's motive or intention is immaterial if the debt he pays is bona fide and enforceable, the payment absolute and made in property not materially in excess of the debt, and no pecuniary benefit or consideration of value, other than the liquidation of the debt, inures to the debtor.

5. *Assignment; Benefit of Creditors; Refusal to Participate; Effect.*—If not put on the ground that the money was not tendered and the transaction was unassailable in other respects,· a creditor who refuses to participate in the assignment could not disturb the assignee's title acquired thereunder, although the payment was only partial, where the stipulated consideration for goods assigned was the payment of 33 1-3% on the claims of all creditors was adequate, especially where such a per cent. was all that a creditor could have gotten on an equal distribution of the debtor's property among the creditors.

6. *Same; Evidence; Good Faith.*—Where property levied on un· der execution is claimed by a third person and the issue was whether the property was that of the defendant in execution and liable to the satisfaction thereof, proof of fraud is admissible, as is proof of good faith on the part of the claimant, and to that end the claimant can show that at the sale of the property to secure a pro rate payment to all the creditors of the seller, creditors were present urging their claims and that negotiations were carried on with them looking to an adjustment of defendant's debts, which finally resulted in an assignment to a party through whom claimant claims.

7. *Same; Instructions.*_—A charge asserting that an insolvent debtor may make a valid sale of his property if the price received is fair and reasonable and the entire consideration was paid to the creditors existing at the time of the sale is correct and not abstract.

8. *Same; Fraud; Instruction.*—On a trial of right of property charges asserting that if the claimant paid a price for the goods not grossly inadequate to their value, and the price was paid to the creditors of the debtor, claimant should recover; and if in good faith, claimants paid a price for the goods not greatly inadequate to their value, and paid the entire consideration to the creditors of the execution debtor, claimant should recover, were properly refused.

9. *Same; Payment of Creditors; Readiness and Willingness.*—While adequate payment to the creditors of an insolvent seller by the buyer of his goods of the value of the goods bought will sustain

the buyer's title, a mere promise to pay though connected with ability and willingness to pay, will not do so.

10. *Trial of Right of Property; Burden of Proof; Instructions.*— A charge asserting that the burden is upon plaintiff to make out a prima facie case that the property belongs to the defendant and that that burden is discharged when plaintiff shows that defendant was in possession thereof at the time of the levy and that then the burden shifts to the claimant to show his ownership, was not objectionable as assuming that the defendant was in possession, and does not place an unnecessary burden on the plaintiff in making out his title.

11. *Evidence; Opinion.*—Where the question was for the jury as to the reasonableness of the price paid by claimant for the goods of the execution defendant, it was not proper to ask a witness as to whether in his opinion the amount paid was reasonable; the proper question was, "What, in your opinion, was the value of the stock of goods?"

12. *Appeal and Error; Presumption.*—No presumption is indulged in favor of error, and hence, a bill of exceptions will not be corrected on appeal by presuming that one party excepted when the bill reads that the other party excepted.

13. *Trial; Order of Proof; Evidence Depending on Other Evidence.*—Where the answer to a question, if favorable could not have been entertained except on the showing of good faith and reasonable diligence by claimant in the collection of the accounts, that being the only condition upon which their value could be shown on a failure to collect, it was not error to refuse to permit a question to one of claimant's witnesses as to how much has been collected on the accounts due the execution defendant, the question referring to a period of several months during which the claim suit had been pending.

14. *Same; Reception of Evidence; Admissible in Part.*—Where the assignment was not admissible at the time it was offered because made to a person other than the claimant and claimant had not connected himself with the assignment, it was proper to exclude a question to the claimant as to what he had done, if anything, since the execution of the assignment in reference to paying to the creditors of the vendor in the assignment the 33 1-3% of their claims mentioned in the assignment.

APPEAL from Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

Trial of the right of property levied upon under execution, between Jacob Epstein and Lightman Bros. & Goldstein, claimants. From a judgment adverse to claimants, they appeal. Reversed and remanded.

The following charges were refused to the claimants: (4) "If you believe from the evidence that the claimants paid a price for the goods not grossly inadequate to their value, and that such price was paid to the cred-

itors of Kartus Dry Goods Company, then your verdict must be in favor of the claimant." (5) "If you find from the evidence that in good faith claimants paid a price for the goods not greatly inadequate to their value, and paid the entire consideration to the creditors of the Kartus Dry Goods Company, then your verdict must be for the claimant." (7) "I charge you that an insolvent debtor can make a valid sale of his property, if the price received is fair and reasonable, and the entire consideration is paid to his creditors existing at the time of the sale." (8) "If you find from the evidence that a fair and reasonable price was paid for the property, and all the consideration was paid to the existing creditors of Kartus Dry Goods Company, except a certain part which was set aside for plaintiff, and a good check therefor sent to him, which plaintiff did not receive or object to because it was in the form of a check and not cash, and that such part of such consideration still remains in the purchaser's hands subject to plaintiff's orders, then your verdict must be in favor of the claimants." (9) "If an insolvent debtor makes a sale of his property for a fair and reasonable price, and the entire consideration is held subject to his creditors' claims, and none of it is secreted, carried away, or applied to any other purpose than the payment of his valid debts, then the sale is a valid transfer."

The judgment is as follows, omitting the formal part: "'We, the jury, find the issue in favor of the plaintiff, and assess the value of the goods levied on at $500.' It is therefore considered and adjudged by the court that the plaintiff have and recover of the claimant the said sum of $500, the value of the goods levied on, so assessed as aforesaid, together with all the costs in its behalf expended, for the recovery of which let execution issue."

[Lightman Brothers & Goldstein v. Epstein.]

GEORGE HUDDLESTON, for appellant.—The stockholders constitute the corporation. Where they agree to a sale of personalty, no directors meeting and no formal action evidenced by minutes is necessary to its validity. —*Jordan v. Collins,* 107 Ala. 572. The intent with which a conveyance is made is involved in every suit to set aside a conveyance as a fraud on creditors, hence evidence is relevant which shows the intent of the grantee and of the circumstances attending the conveyance. *Teague v. Bass,* 131 Ala. 424; 3 Mayf. Dig. 853. Where a conveyance is attacked as a fraud on creditors and the purchaser shows that it was supported by a valuable and sufficient consideration, the burden of proof shifts to the attacking creditor to show that it was fraudulent, such as that a benefit was reserved.—*Morrow v. Campbell,* 118 Ala. 330; *Moog v. Farley,* 76 Ala. 246; *Jordan v. Collins,* 107 Ala. 572. An insolvent debtor may sell his property for a fair price provided the consideration is paid to creditors.—*Rankin v. Vandiver,* 78 Ala. 562; *Cottingham v. Greeley, etc., Co.,* 129 Ala. 200; 3 Mayf. Dig. 857-873. Inadequacy of consideration to invalidate a deed must be so gross as to shock the conscience.—*Pope v. Brandon,* 2 Stew. 401; *Bozeman v. Draughan,* 3 Stew. 243; *McCaskle v. Amarine,* 12 Ala. 17; *Prosser v. Henderson,* 11 Ala. 484.

TROTTER & ODELL, for appellee. No brief came to the Reporter.

SAYRE, J.—Trial of the right of property, in which the appellants intervened as claimants. Plaintiff offered evidence to prove his claim against the defendant, the Kartus Dry Goods Company; the writ of execution, with the sheriff's return thereon; the levy of the execution on the property in controversy; and that the goods, when levied on, were in the storehouse where the defendant had carried on business until about six

months prior to the levy, and in charge of Sam Kartus, who had been an employe of the defendant corporation. Here the plaintiff rested. Thereupon the claimants showed that the Kartus Dry Goods Company was a corporation, with R. A. Porter, W. L. Wilson, and N. V. Millsap as shareholders, owning the entire stock, and that the corporation had no corporate seal. Then the claimants offered in evidence a paper writing which seems to have been intended to evidence a sale of all the property of the Kartus Dry Goods Company to Lightman Bros. & Co., and J. Goldstein & Co., on consideration that the said vendees should pay to each creditor of the vendor 33 1-3 per centum of their debts. This writing was objected to by the plaintiff, and that objection was sustained by the court.

Appellants in their brief state that it was objected to on the ground that it was not under seal and that it did not appear to have been authorized by the corporation. It may be conceded that the objection here stated was untenable.—*Jordan v. Collins*, 107 Ala. 572, 18 South. 137. But doubtless, if the appellee had filed a brief, he would suggest that the record does not show what ground of objection was urged or sustained, and, whether so or not, if there was any ground upon which the deed of assignment was properly excluded, the trial court will not be put in error. The claimant must recover on his own title. He cannot set up an outstanding title with which he does not connect himself.—*Seissel v. Folmar*, 103 Ala. 491, 15 South. 850. It may be further conceded that the evidence introduced at a later stage of the trial afforded ground for the inference that Lightman Bros. & Goldstein, the claimant firm, purchased the goods in dispute from Lightman Bros. & Co. and J. Goldstein & Co., or in some other legitimate way succeeded to their rights; but at the time the deed of assignment was offered in evidence nothing of this had appeared, nor was the trial court informed, so far as

the record shows, that it would be made to appear. The case thus presented to the trial court was a case in which the claimant firm offered to prove a conveyance to two other and different firms, without connecting itself with the title so passed. On this showing, it cannot be said that there was error in the ruling under consideration. If this paper had been offered at a later stage of the trial, and after some evidence had been offered to show that claimants claimed under Lightman Bros. & Co., and J. Goldstein & Co., doubtless the court would have allowed it in evidence.

There was evidence on behalf of the claimants which went to show that they had purchased defendant's stock of goods in consideration of the absolute payment of defendant's indebtedness to claimants and the agreement by claimants to pay all other creditors of the defendant 33 1-3 per centum of their claims, claimants accepting the same per centum in payment of their debt—substantially the agreement shown by so much of the rejected writing as we have mentioned above; that all creditors had accepted payment, except the plaintiff. It was admitted that on the day after the sale claimants had mailed to plaintiff a check for 33 1-3 of his debt against the defendant, which check was good and would have been paid on presentation, the same being mailed with an explanation that it was a part of the proceeds of the assignment to claimants, and that plaintiff retained the check during 30 days, approximately, when he returned it to claimants. Defendant was insolvent. It has been repeatedly decided by this court that an insolvent debtor may select and pay which of his creditors he will, and thus disable himself to pay the others anything; and it makes no difference if the preferred creditors know that the effect of the transaction will be to deprive the debtor of all means with which to pay his other debts. This is said without any reference to the effect of section 4295 of the Code of 1907, which is to

be administered in a court of equity. We speak merely of the effect of such transactions in a court of law. Nor is the motive or intention of the debtor a material inquiry, if the requsite conditions exist. Those conditions in a case like this are: First, the debt must be bona fide and enforceable, not simulated; second, the payment must be absolute, and, if made in property, must not be materially in excess of the debt; third, no pecuniary benefit or consideration of value, other than the liquidation of the debt, must inure or be secured to the debtor. As was said by Stone, C. J., in *First National Bank v. Smith*, 93 Ala. 97, 9 South. 548: "The inquiry at last is, did the creditor bargain for and receive overpayment, or payment in excess of his just demand?"—*Pollock v. Meyer*, 96 Ala. 172, 11 South. 385; *Knowles v. Street*, 87 Ala. 360, 6 South. 273; *Carter v. Coleman*, 84 Ala. 268, 4 South. 151; *Meyer v. Sulzbacher*, 76 Ala. 128; *Hodges v. Coleman*, 76 Ala. 103.

As we gather from the record, the main contention between the parties concerned the adequacy or inadequacy of the consideration paid by the claimants for the goods. The trial court appears to have proceeded upon the idea that no issue but that of the adequacy of the price paid was involved. If the price paid was adequate, the bona fides of the debts and their payment not being controverted, all else was immaterial, to be sure; but if the jury had found, as they were authorized to do under the evidence, and as in fact they did, that the goods were worth something more than the price paid, then it became material to inquire, not only what claimants got by the bargain, but what they bargained to get—in other words, their good faith came into dispute. Possibly, also, contention was made that Sam Kartus was the real owner of the Kartus Dry Goods Company, and that the sale was a mere device by which he attempted to get rid of his debts by a compromise while retaining

his goods. We do not mean to say the evidence would have justified a finding to that effect; but on the case as presented the court must have dealt with it as though both the bona fides of the sale and the adequacy of the consideration were in dispute. Assuming that the stipulated consideration was adequate, we think that the plaintiff, by refusing to accept a payment which, though partial, was all he could have gotten on an equal distribution of his debtor's property among his creditors, the refusal not being put on the ground that money was not tendered, could not disturb claimants' title acquired by a transaction unassailable in every other respect. The issue made between the parties by the formal pleadings was in form most general. It was nothing more than the assertion on one part and the denial on the other that the property levied on was the property of the defendant in execution, and liable to the satisfaction of the writ. This admitted proof of fraud. Claimant was entitled to show good faith. There was no pretense of a combination among other creditors to defraud plaintiff. It would seem that the claimant Lightman ought to have been permitted to show that other creditors were present at the time of the sale urging their claims, and that negotiations were carried on with them looking to an adjustment of the Kartus Dry Goods Company's financial difficulties, which finally resulted in the assignment, and what else of the same general character the claimants did looking to an adjustment, as tending to show that the thing was not done in a corner, and hence good faith.

The trial court did not deny to claimants the right to prove payment to creditors of the proportion of their debts assumed. That was proved without contradiction. But claimants, exhibiting to the witness Lightman the assignment heretofore mentioned, inquired: "Since the execution of this paper what did you do, if anything, with reference to paying the creditors of the

Kartus Dry Goods Company the 33 1-3 per centum of their claims mentioned therein?" This was before that paper had been offered in evidence. Immediately thereafter it was offered in evidence, but, as we have already seen, excluded without error. For the reasons which led us to conclude that the ruling excluding the paper was not error, we think the ruling here was properly made. The question referred to the paper writing in a way which made it a part of the question, and, if permitted, would have gotten the paper before the jury.

Claimants asked the witness Lightman the following question, referring to accounts owing to Kartus Dry Goods Company: "How much has been collected on these accounts?" The bill of exceptions shows an exception reserved by the defendant to the court's ruling against the question. During seven months of the time covered by the question the claim suit had been pending. Under these circumstances the answer, if favorable to claimants, would have been properly entertained only on a showing of good faith and reasonable diligence exercised by the claimants in the collection of the accounts, for only so could their value be shown by a failure to collect. For this reason we are not inclined to hold there was error in the court's ruling, conceding the question to be properly raised. It is natural to suppose that the claimants were the parties excepting, and rather than put the trial court in error we would indulge a presumption to that effect. But no presumptions are ever indulged in favor of error. Accordingly we will not correct the bill of exceptions by presuming that the claimants excepted, when its reading is that the defendant excepted.

Again, claimants asked the witness Kartus: "State whether or not, in your opinion, the amount paid by Lightman Bros. & Goldstein for this stock of goods was a reasonable price." Kartus was qualified by experience and a knowledge of the particular goods to answer

a question as to their value, and doubtless he would have been allowed, on proper interrogation, to answer a question calling for his judgment of the value of the stock of goods. But here he was asked to decide by his answer the question to be submitted to the jury, and that possibly upon considerations which ought not to have influenced the jury, viz., consideration of those circumstances, for example, of hazard in the transaction arising out of its liability to attack by creditors, or of the prudence in other respects of the purchasers making the particular investment, which had nothing to do with the market value of the goods. In short, there was no occasion for a departure from the usual question, "What, in your opinion, was the value of the stock of goods?" or, "What was the stock of goods worth?"

On the request of the plaintiff the court charged the jury as follows: "I charge you that the burden is on the plaintiff to make out a prima facie case that the property is defendant's, which burden is discharged when he shows that defendant was in possession of the property at the time of the levy, and that then the burden shifts to claimants to overcome this, and to show to your reasonable satisfaction their ownership." This charge is criticised by appellant as assuming that defendant was in possession of the property, whereas there was no evidence tending to show that Kartus, who without question was in possession, held that possession for the claimants. But we do not so read the charge. In our judgment the word "when," as used in the charge, is the equivalent, not an altogether satisfactory one, perhaps, but nevertheless a roughly serviceably equivalent, for "if." The charge is further criticised as placing an unnecessary burden of proof on the claimants, when the plaintiff has made out a prima facie case. It is said that burden on the claimants under the condition hypothesized is not to prove ownership, but only that the conveyance of title was support-

ed by an adequate consideration, after which the burden of proving fraud rests upon the plaintiff. It is clear, however, that the thing of ultimate consequence in law is title and ownership. And if proof of adequate consideration is enough, it is enough because it proves title and ownership. So, therefore, the charge stated a correct proposition of law.

Where the only evidence of fraud is to be found in the inadequacy of price paid, the statement is found in the books that the inadequacy must be so great as to shock the conscience. This is a strong expression, better suited to those cases in which the grantor attacks his own conveyance as procured by fraud. Besides, charge 2 is involved and lacks clearness. For use in the instruction of a jury, it needs explanation of how a fraud may exist in a sale made in good faith. That expression means, of course, such fraud as is to be inferred from inadequacy of consideration in a sale otherwise free of taint, but this the charge would not make clear to the jury.

The proposition of charge 7 is sustained by the authorities to which we have hereinbefore referred, and it ought to have been given, unless it may be criticised as being abstract. Plaintiff refused to accept the check tendered him. To that extent, if at all, the entire consideration had not been paid. But, as we have in effect said, we think the tender of the amount to plaintiff must be held the equivalent of payment for the purpose of sustaining claimants' title, other necessary conditions concurring, but not, of course, for any other purpose. The charge was not abstract, and asserted a correct proposition of law. Charges 4 and 5 carry the proposition of charge 7 to an extent which we need not approve. Charge 8 should have been given.

Any sort of, even compulsory, adequate payment to the creditors of his vendor by the vendee of the value of the goods bought, will sustain the vendee's title. –

*Cottingham v. Greely Grocery Company*, 129 Ala. 200, 30 South. 560, 87 Am. St. Rep. 58. But it has never been announced that a creditor may acquire title to the goods of his insolvent debtor on consideration of a mere promise to pay the debts of his vendor, even though the promise be connected with an ability and willingness to pay. We are not inclined to open that door to fraud. The proposition of charge 9 is untenable.

Judgment was rendered for the plaintiff for a round sum, without an assessment of the value of each article separately. We will assume that the separate assessment of the value of each article was impracticable, as it doubtless was; but the judgment should have been a judgment condemning the property levied on to the satisfaction of plaintiff's demand. The claimants had the right under section 6042 of the Code to deliver the property to the officer making the levy and pay the costs of the trial of the right of property within 30 days of the judgment, and thus acquit themselves and their bondsment of further liability. The judgment was clearly erroneous.—*Seisel v. Folmar, supra.*

This case has been discussed without reference to any effect the rejected paper writing would have had, if allowed in evidence, as it probably will be on another trial. It has provisions of which nothing has been said. We do not say that its introduction would change materially any aspect of the case. That aspect, whether materially different or not from the aspect presented by the case without the paper writing, was not the subject of consideration in the trial court, has not been referred to by counsel, and we deem that a discussion of it at this time and under these conditions would be unprofitable.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.